IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CARL LEGG, GENESIS GROUP, LLC and
GENESIS GROUP, INC.,

                    Plaintiffs,

          v.

BOU-MATIC, LLC,

                    Defendant.

OPINION AND ORDER

12-cv-70-slc

---

In this civil diversity action, plaintiffs Carl Legg; Genesis Group, LLC; and Genesis Group, Inc. allege that defendant Bou-Matic, LLC breached the parties' dealership agreements and then failed to pay rent, rebates and incentives owed to plaintiffs and failed to repurchase inventory under the terms of the agreements.  Before the court is BouMatic's motion for summary judgment in which it argues that plaintiffs' amended complaint is invalid, plaintiffs' claims are barred by the claim preclusion and the common law compulsory counterclaim rule and plaintiffs cannot prove their claims.  Dkt. 26.  Also before the court is BouMatic's motion to strike the declaration of Lee Zoellner filed by plaintiffs in support of their summary judgment response on the ground that plaintiffs failed to identify Zoellner in their Fed. R. Civ. P. 26(a) disclosures.  Dkt. 55.

I find plaintiffs' amended complaint to be valid.  However, because I conclude that the claim preclusion doctrine and common law compulsory counterclaim rule apply to plaintiff's claims in this lawsuit, BouMatic is entitled to summary judgment on all of plaintiffs' claims.  It

is therefore unnecessary to address the parties' arguments related to the merits of plaintiffs' individual claims or BouMatic's motion to strike.[1]

For the purpose of deciding BouMatic's motion for summary judgment, I find from the parties' submissions that the facts set out below are material and undisputed:

FACTS

Plaintiff Carl Legg is a citizen of the state of Idaho. Plaintiffs Genesis Group, LLC and plaintiff Genesis Group, Inc. (collectively "Genesis") are both organized under the laws of the state of Idaho.

Defendant Bou-Matic, LLC is a limited liability company organized under the laws of the state of Nevada.

Although the parties dispute the exact relationship between each of the plaintiffs and BouMatic, they agree that plaintiffs were, in some form, dealers of BouMatic goods from February 2006 until March 2009, when BouMatic terminated the parties' relationship. In agreements signed in February, May and November 2006, Carl Legg signed on the line for "dealer." "Genesis/Carl Legg" is listed as "dealer" in the agreements and "Genesis" is listed as "dealer name." The agreements were similar in terms but provided for the sale of BouMatic products in different counties in Idaho.

---

[1] For whatever reason, defendant did not address in its reply brief plaintiffs' opposition to its claim preclusion argument, unless we count the expository first two sentences of that brief, *see* dkt. 57. Arguments *raised* for the first time in a reply brief are waived, *Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012), and a failure to reply to a response has been deemed waiver, *see United States v. Farris*, 532 F.3d 615, 619 (7th Cir. 2008), although in *Farris,* defendant "failed to respond" to the government's waiver argument, *see id.* Here, I do not find that defendant has abandoned or waived its claim preclusion argument.

BouMatic alleges that beginning in 2008, Genesis began to fail, and it developed a large debt owed to BouMatic.  After terminating its relationship with Genesis, BouMatic filed suit on May 28, 2009 in the Circuit Court for Dane County, Wisconsin, against Legg, Genesis Group, LLC, Genesis Group I, LLC and Genesis Group, Inc. claiming unpaid debts on goods purchased, inventory and various accounts receivable.  *See* Dane County Case No. 09-CV-2605.

On June 25, 2010, as part of the state court litigation, Legg and Genesis filed a motion to compel BouMatic to repurchase their unsold BouMatic inventory pursuant to the dealership agreements and applicable law.  However, Genesis subsequently served a letter stating that Legg had to sell this inventory under the terms of a third-party secured interest agreement.  As a result, Legg and Genesis withdrew their motion to compel on March 29, 2011.

The key dispute in the state lawsuit was determining when BouMatic became aware that it was dealing with a corporation with limited liability.  The state court held that Legg failed to show that he had properly notified BouMatic of Genesis's change in corporate status, and this failure made Legg personally liable for all of the corporate debt.  BouMatic obtained a judgment against Genesis Group, LLC in the amount $611,376.54, and a judgment against Genesis Group, Inc., Genesis Group I, LLC and Carl Legg personally in the amount of $471,483.94.  The judgments remain unsatisfied.  After losing in state court, Genesis filed this federal lawsuit against BouMatic on February 1, 2012.  Dkt. 2.

OPINION

## I.  Summary Judgment Standard

Summary judgment is proper where there is no showing of a genuine issue of material fact, and where the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56. "'A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party.'"  *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007) (quoting *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005)).  In determining whether a genuine issue of material facts exists, the court must construe all facts in favor of the nonmoving party.  *Squibb v. Memorial Medical Center*, 497 F.3d 775, 780 (7th Cir. 2007).  Even so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).


## II.  Improper Amended Pleading

In a brief initial argument, BouMatic asserts that plaintiffs' second amended complaint should be dismissed because it does not contain any factual allegations or claims.  *See Duda v. Board of Educ. of Franklin Park Public School Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998) ("Once an amended pleading is filed, it supersedes the prior pleading."); *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204 (7th Cir. 1998) ("facts not incorporated into the amended pleading are considered functus officio").  As plaintiffs indicate, however, their amended complaints incorporated all of their prior complaints by reference.  In their second amended complaint, plaintiffs make four new allegations related to their citizenship and "incorporate by

4

reference the original complaint on file herein and the amended complaint on file herein, except as specifically amended by this document."  Dkt. 19.  Therefore, the pleading is proper.

### III.  Claim Preclusion

BouMatic contends that plaintiffs are barred from asserting their claims in this court pursuant to Wisconsin's doctrine of claim preclusion and common-law compulsory counterclaim rule.[2]  In Wisconsin, "a final judgment is conclusive in all subsequent actions between the same parties [or their privies] as to all matters which were litigated or which might have been litigated in the former proceedings."  *Menard, Inc. v. Liteway Lighting Products*, 282 Wis. 2d 582, 595-96, 698 N.W.2d 738 (2005) (citing *N. States Power Co. v. Bugher*, 189 Wis. 2d 541, 550, 525 N.W.2d 723 (1995)).  The three requirements of claim preclusion are:  (1) an identity of parties or their privies in the prior and present suits; (2) an identity of causes of action in the two suits; and (3) a final judgment on the merits.  *Id.*  The parties agree that the first and third elements are satisfied in this case.

Plaintiffs argue that requirement (2) is not met because there is no identity of claims in the state and federal lawsuits.  Apart from this, plaintiffs contend that even if all three requirements were met, Wisconsin's claim preclusion doctrine does not control in a situation where its application would be inconsistent with the state's permissive counterclaim statute, Wis. Stat. § 802.07(1), which is grounded in the belief that a defendant should "be given his day in

---

[2] The preclusive effect of a state court judgment is determined by the laws of the state in which the rendering court sits—in this case, Wisconsin.  *See Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 373 (1996); *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 81 (1984); 28 U.S.C. § 1738 (Full Faith and Credit Act mandates "judicial proceedings" of any state "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.").

court when and where he sees fit." *Wickenhauser v. Lehtinen*, 302 Wis. 2d 41, 58-59, 734
N.W.2d 855, 864 (2007) (quoting *A.B.C.G. Enters., Inc. v. First Bank S.E., N.A.*, 184 Wis. 2d
465, 476, 515 N.W.2d 904 (1994)).  In *Wickenhauser*, the Wisconsin Supreme Court explained
that:

> [O]ur general statements of claim preclusion involve the
> application of claim preclusion to a plaintiff in a second action
> who was also a plaintiff in the first action, to a plaintiff in privity
> with the plaintiff in the first action, or to a counterclaiming
> defendant who did not prevail in the first action.  Claim
> preclusion, *standing alone*, is not a bar to a subsequent suit by a
> defendant who chooses not to counterclaim in the first action.
> Were this not so, claim preclusion would improperly operate as a
> compulsory counterclaim rule.

*Id.* (emphasis in original).

Notwithstanding this limiting admonition, "a defendant who has a claim against a
plaintiff in the first action is [not] always free to sit on his claim until some later lawsuit without
danger of losing the right to bring it."  *Id.* at 59.  Wisconsin has adopted the common-law
compulsory counterclaim rule, which creates an exception to the permissive counterclaim statute
and bars a subsequent action by a party who was a defendant in a previous suit if "a favorable
judgment in the second action would nullify the judgment in the original action or impair rights
established in the initial action."  *Menard*, 282 Wis.2d at 597 (quoting *A.B.C.G.*, 184 Wis.2d
at 476-77).  I will address in turn the parties' arguments relating to identity of the state and
federal causes of action and the application of the compulsory counterclaim rule.

### A.  Identity of Claims

To determine whether there is an identity of claims, Wisconsin has adopted the "transactional approach" from the Restatement (Second) of Judgments § 24 (1982).  *Menard*, 282 Wis. 2d at 598; *N. States Power*, 189 Wis.2d at 553.  "'Under this analysis, all claims arising out of one transaction or factual situation are treated as being part of a single cause of action.'" *A.B.C.G.*, 184 Wis. 2d at 480-81 (quoting *Parks v. City of Madison*, 171 Wis. 2d 730, 735, 492 N.W.2d 365 (Ct. App. 1992)).  A transaction "'connotes a natural grouping or common nucleus of operative facts.'" *Id.* at 481 (quoting Restatement (Second) of Judgments § 24 cmt. b).  To determine whether claims arise from one transaction, courts "may consider whether the facts are related in time, space, origin, or motivation." *Id.*

Plaintiffs argue that the state and federal lawsuits do not arise out of the same transaction because BouMatic's state lawsuit was a collection action for nonpayment of invoices, whereas plaintiffs' federal lawsuit is based on BouMatic's breach of its contractual obligations relating to exclusivity and competitive circumstances.  According to plaintiffs, BouMatic violated the dealership agreements by adding a competitor in plaintiffs' exclusive service area, raising the cost of goods, shifting accounts, not repurchasing its inventory after termination and failing to pay rent, rebates and incentives owed to plaintiffs.  However, all of the claims in the state suit and the present suit are part of the same overall transaction between the parties; they all arise out of the same dealership agreements and involve a common set of material facts.  Although BouMatic's alleged anti-competitive conduct was not addressed specifically in the state court action, the operative facts were on the table:  plaintiffs claimed that it was this very conduct that prevented them from being able to pay their bills to BouMatic.

"The transactional approach views claims under a pragmatic standard that focuses on whether the two causes of action arise out of the same common set of material facts." *Menard,* 282 Wis.2d at 601.  "It is irrelevant that 'the legal theories, remedies sought, and evidence used may be different between the first and second actions.'"  *Id*. at 599 (quoting *Kruckenberg v. Harvey*, 2005 WI 43, ¶ 26, 279 Wis. 2d 520, 694 N.W.2d 879)).  *See also N. States Power*, 189 Wis.2d at 555 ("[T]he number of substantive theories that may be available to the plaintiff is immaterial—if they all arise from the same factual underpinnings.") (citing Restatement (Second) of Judgments § 24 cmt. a).  The fact that the claims may involve separate financial transactions—such as the sale of goods and the return of those goods—also is not dispositive. *Menard*, 282 Wis. 2d at 600.

In short, I find that requirement (2) is met:  there is an identity of claims between the state and the federal lawsuits.


### B.  Common-Law Compulsory Counterclaim

Even though I have concluded that all the elements of claim preclusion are met, as plaintiffs point out, this federal lawsuit is not barred unless plaintiffs' success would nullify the state court judgment or impair the rights established in that case.  *Wickenhauser*, 302 Wis. 2d at 63.  BouMatic argues that allowing plaintiffs to proceed with their present suit necessarily would reconfigure the debts under the dealership agreements, impairing its previously-determined rights and undermining the validity of the state court judgment.  Plaintiffs counter that the state court judgment would remain valid and could be used to offset any indebtedness established in the federal case.

8

The application of the common-law compulsory counterclaim rule by the court in *A.B.C.G.* is instructive here.  In that case, First Bank, the mortgagee, brought six foreclosure actions against A.B.C.G. pursuant to its mortgage assumption agreements.  *A.B.C.G.*, 184 Wis. 2d at 471.  After default judgments were entered in favor of First Bank, A.B.C.G. filed a lawsuit alleging that First Bank (1) misrepresented the investment quality of the properties; (2) breached the parties' contract regarding payment schedules and extension of credit for repairs to the properties; and (3) failed to properly manage the properties and collect, apply and conserve rental payments collected from the properties.  *Id.* at 471–72.  A.B.C.G. sought compensatory damages on the theory that First Bank's actions caused it to default on its mortgage agreements and to lose its interests in the properties due to foreclosure.  *Id.* at 472.  The court disagreed, holding that

> If we were to allow ABCG to recover damages from First Bank, or if we were to grant other "equitable" remedies (as ABCG requests), the judgment awarding First Bank the amounts due on the properties and additional costs would be rendered meaningless.  If a court found the mortgages invalid or First Bank to have caused the default, First Bank could be essentially forced to return its previous recovery.

> *Id.* at 483.

The Wisconsin Supreme Court reached a similar conclusion in *Menard*, 282 Wis. 2d 582. There, Menard had purchased lighting products from Liteway, and during the business relationship, Menard held back "money due to Liteway as 'credit' for products Menard claimed were defective."  *Id.* at 587, ¶ 3.  After the business relationship ceased, "the parties began disputing the amount of money Menard owed Liteway."  *Id.*  Liteway sued Menard for breach of contract due to unpaid invoices and obtained a default judgment because Menard failed to

file a timely answer. *Id.* at 588-89, ¶¶ 6-7. Menard later sued Liteway in a separate action, alleging that it had not been reimbursed for some returned defective products and, as a result, Liteway had been unjustly enriched. *Id.* at 588, ¶ 4. Liteway answered, asserting claim preclusion as an affirmative defense because Menard's claims could have been brought in Liteway's prior action for unpaid invoices. *Id.,* ¶ 5. Because of the collateral consequences that Menard's claims could have had on the judgment in the first action, the court held that the common-law compulsory counterclaim rule barred Menard's subsequent suit for credit for the returned goods. *Id.* at 594, ¶ 22 (finding that both suits involved amount of money Menard owed Liteway, and Liteway could not have recovered price of goods sold to Menard if those goods were defective).

The same is true in this case. Both lawsuits involve the amount of money plaintiffs owed BouMatic pursuant to their dealership agreements. The state court would not have awarded BouMatic the same dollar amount for the price of goods it sold to plaintiffs if it had found that Boumatic also owed money to plaintiffs for rent, incentives, rebates or the repurchase of inventory pursuant to the terms of the dealership agreements. Therefore, offsetting the judgment obtained in state court would necessarily put the amount of the state court judgment in issue, impairing BouMatic's rights as established by the state court judgment and ultimately undermining the validity of the debt. *See Menard*, 282 Wis. 2d at 606 and 612, ¶¶ 39, 51 ("The reasons *why* Menard asserts it does not owe as much as Liteway originally claimed are not unpleaded issues or new transactions; they are merely defenses and/or counterclaims to Liteway's original claims based on the same set of facts as Liteway's claims."). The parties' competing claims for money owed pursuant to their agreements are two sides of one coin.

10

Further, as BouMatic points out, plaintiffs already attempted to offset the debt owed to BouMatic in the state court action by filing a motion to compel BouMatic to repurchase unsold BouMatic inventory.  Plaintiffs ended up withdrawing that motion, stating that Legg had been forced to sell the inventory.  Even though plaintiffs now suggest that their attorney at the time misrepresented the status of the inventory to the state court, that fact is irrelevant because the matter was raised to the state court and *could* have been addressed and resolved by the state court in that lawsuit.  *Cf. Menard*, 282 Wis.2nd at 607-08 (noting that "[m]aterial operative facts occurring *after* the decision of an action with respect to the same subject matter may . . . comprise a transaction which may be the basis of a second action not precluded by the first."). Plaintiffs do not get a do-over because they made a mistake in the first action.

Similarly, even though BouMatic's alleged changes to the competitive circumstances in plaintiffs' dealership territory were not addressed specifically in the state court action, these alleged changes directly relate to the legitimacy of BouMatic's state court judgment.  As discussed above, plaintiffs assert that this conduct breached the dealership agreements and resulted in plaintiffs not being able to pay their bills to BouMatic.  If plaintiffs were allowed to proceed with this federal suit and were to obtain a favorable judgment, then BouMatic might be forced to return a portion of its previous recovery, which it was entitled to obtain only because it established in state court enforceable dealership contracts for the sale of goods.  *See id.* at 613-14, ¶¶ 52-53 (finding same); *A.B.C.G.*, 184 Wis. 2d at 471–72 (rejecting similar tort and breach of contract claims where there had been previous action in foreclosure).

11

In conclusion, Wisconsin's doctrine of claim preclusion and the common law compulsory counterclaim rule bar plaintiffs' claims in this federal lawsuit.  Accordingly, BouMatic is entitled to summary judgment as a matter of law.


ORDER

IT IS ORDERED that defendant BouMatic, LLC's motion for summary judgment (dkt. 26) is GRANTED.  Defendant's motion to strike (dkt. 55) is DENIED as moot.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 7th day of January, 2013.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge